And the next case is Madden v. Cowen & Company. Good morning, Your Honors. Good morning, Your Honors. May it please the Court. I represent the over 60 plaintiffs in this case, the Madden plaintiffs, most of whom are physicians, with respect to their claims against Cowen, for negligence, negligent misrepresentation and professional negligence. As I see it, I'd like to highlight two what I think are determinative issues besides what is in the briefs. What I'm about to address is in the briefs, but I think if you agree with me, the issues become very simple. First issue is whether, if SLUCE applies, the Securities Litigation Uniform Standards Act, if it does apply, does it come within the carve-out provisions? You're talking about the Delaware carve-out subsection D? That's correct, Your Honor. And I think it clearly does. Can you, in making this argument, now, I found these arguments very complicated, and it would be really helpful for you to explain to me, if we could walk through section D and you could explain why exactly it applies to this action, why this action is preserved? It's preserved because there are ---- Whose key issue were in your interpretation of the statute? That's a great question, and I'm glad you raised that. I had that very same discussion in preparing for this with a number of people, so I'm glad you raised it. And, in fact, I had that discussion with my wife last night because she works with me and she's been in banking, and I wanted to be sure that that issue was clear. And you highlighted the question that I think needs most clarification, and that is, who are the issuers? And I think if you read the carve-out, it doesn't refer to the issuer of the acquiring company or the issuer of the acquired company. It refers to an issuer. And in every merger ---- The issuer, not an, the. Actually, Your Honor, it says an ---- What does it say, an? It says, if you look under section 2, it says, any recommendation, position, or other communication with respect to the sales securities of an issuer. Okay. This is ---- I'm looking at a 2, but I can't believe the 2 you're quoting. Yes. Your Honor, may you tell me what the page is of your brief? Can you tell me? What page are you looking at? The page is in terms of your brief. I'm looking at 55. There's a 2 on it, but there must be another 2 somewhere. Okay. Well, if you look at page 55, it says, any recommendation, position, or other communication with respect to the sales securities of an issuer. Where is that? Oh, I see. Down in ---- Yes. 3. It's section 3, I believe. Yeah, it's 3A ---- Okay. Mary, just to mention, that's the problem I have, is whether we have covered stock at all. Good morning, Your Honor. This is Linda Goldstein for the appellees here. Whether we have covered securities at all, I'm happy to address that or happy to go into the Delaware exception first. Why don't you respond to Jim? Covered securities, well, there are three reasons why there are covered securities here. First, as the district court held, that issue was decided in the earlier case that these very plaintiffs brought against Deloitte. I had a lot of trouble with that argument. I mean, the definition of covered security includes this temporal element at the time during which it is alleged that the misrepresentation, omission, et cetera, occurred. And that case was referring to somebody else's misrepresentation. So I don't see how that could apply to this misrepresentation. Yes, Your Honor. It was somebody else's alleged misrepresentation in the very same document. Well, that's the argument they're making, is that the misrepresentation wasn't made in that document. It was made at some earlier time. No, that's the plaintiff's argument. Right. That's the very argument they're making. So how did our prior decision address that issue? The prior decision, well, just to uncover the origin of it, the district court in the Deloitte case held that misrepresentations appearing in the prospectus were misrepresentations after the issuance of or after there were covered securities, because at that point the FPA shares that these plaintiffs received were listed for registration and could be sold on the NASDAQ. So the misrepresentations that were alleged in the Deloitte complaint were Deloitte audited financial statements that dated back to 1996, and Deloitte authorized those 1996 financial statements to appear in the 1998 prospectus in a February 9 letter. But Madden's argument is not when the prospectus, whether the prospectus was issued after the securities. Their argument is, well, the misrepresentation was made on the 5th, not on the 17th when it was published. Correct. I didn't see that we directly addressed that issue. Well, it was so held by the district court that the misrepresentations in the prospectus on the 17th were in connection with a covered security. The decision was affirmed by this court. This court's decision, true, did not expressly address that point, but it did affirm the ruling of the court below, which did expressly hold that statements in the prospectus were in connection with a covered security. I might also. There isn't collateral essential from the Deloitte 2 case. How would you respond to the argument that it's not a covered stock because it was issued after the letter was sent? Absolutely, Your Honor. This was an issue that was briefed both in the earlier case and in the court below and was not addressed by any of the previous courts. The argument is that the word security, as used in SLUSA, is not defined. However, security is a defined term in the 1934 Act, and security is defined there to include stock. It doesn't say shares. At all the times relevant here, February 5, February 10, February 17, FPA common stock was listed on the NASDAQ and was trading. It's just that the specific shares that these plaintiffs eventually got were not trading on the NASDAQ because those hadn't been authorized yet. I know you have this class of covered securities argument. I couldn't see any statutory basis for that at all. Now, you're referring to some language that says security includes stock, not shares, but I guess I'm having trouble seeing where this concept that if you're an issuer of covered securities, then everything is a covered security. Well, it's not quite we're saying that everything is a covered security. We're saying that the shares that these plaintiffs got were common stock, just like the common stock that was already trading throughout February of 1998. The analogy, Your Honor, and this Court's precedent on this point is the Falkowski case, which is cited in our brief. The Falkowski decision held that options which were issued in connection with a merger, that misrepresentations made about those options were misrepresentations in connection with a covered security. And the analogy is as follows, Your Honor. Those options were securities, but they weren't listed. You couldn't buy them on the NASDAQ. The underlying common stock to which those options referred was a covered security. And the Ninth Circuit held in the Falkowski decision that misrepresentations about those options were misrepresentations really about the underlying common stock, which was already out there and trading. And so the analogy here is that misrepresentations about FPA was about the FPA common stock, which was already out there listed. You could buy it on the NASDAQ. And so the fact that these particular shares weren't issued yet is irrelevant, because the statements that Cowan made were all based on the publicly filed financial statements that FPA had made with the SEC. These were shares that were out there. It's not really in connection with covered securities. It's in connection with anyone who issues covered securities. Is that right? Well, it's in connection with these covered securities, because the common stock that plaintiffs got was the same common stock that was already out there and trading. We're not talking about comparing, say, different kinds of securities. Let's say there were different classes of stock, or let's say FPA had bonds as well as common stock. We're saying anything that relates to that common stock. And that's what these plaintiffs got. They got common stock that had the same value as the common stock that was traded on the NASDAQ. And so the Falkowski decision, we believe, speaks directly to this point that it doesn't have to be about the actual security, though the Falkowski plaintiffs had options. So the misrepresentation there related to the common stock that was out and trading. Could you address when the misrepresentation occurred? The misrepresentation? Why did it occur when it was published in the registration statement when the letter was finalized, I guess, on February 5th? Plaintiffs have not pointed to any federal securities law that says you look back beyond the date that a document is filed with the SEC and sent to plaintiffs to determine when a misrepresentation is made. We don't in any context, for example, statute of limitations purposes, look back and say, well, when did the drafters put their pencils down and stop writing these documents? We look at when did this document get filed with the SEC? When was it sent out to the plaintiffs? So there's really no authority to go back any earlier on that point. So my turn to the Delaware exception, Your Honor. It's an important point with the covered securities, and it does require some close textual analysis and also some understanding of the structure of SLUSA. And I'll turn now and look at the actual text of the Delaware carve-out as we reproduced it in our brief at page 64. The first observation that I would make with respect to the Delaware carve-out is, fairly pedestrian, it's an exception. So anything that comes within the carve-out must be within SLUSA in the first place. Otherwise, there would be no need for that exception. So for any of the Delaware carve-outs, we have to have the purchase or sale of a covered security. Otherwise, we're not even within SLUSA to begin with. So looking at the very first of the Delaware carve-outs, I'll quote the entire carve-out. It refers to the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer. Now, somewhere in this carve-out, we have to locate the purchase or sale of a covered security. Otherwise, we wouldn't even be within SLUSA in the first place. Are you saying that the district court couldn't say, you know, regardless of whether this is a covered security or falls under the preclusion, I'm just going to decide on the basis that this is an action preserved by, for the State courts? No. The district court would have to find in the first place that it was, well, I guess a prudent court would find in the first place that it was preempted by SLUSA before turning to the Delaware exception. It's the way this ‑‑ I guess my argument is not what the district court would have to do, but how the statute is structured and how to interpret the meaning of the words in the subsection. So in this first subsection, there are no exchanges. There's only one purchase or sale of securities. So there can only be one issuer. And since we know we're talking about covered securities, that has to be the issuer of the covered securities because there's no other party to these transactions. If I ask you a question about that, it refers to purchase. How would the issuing company be purchasing anything? Issuer ‑‑ well, this is not ‑‑ the issuer could be issuing new shares to its own shareholders or it could be buying shares back from its shareholders. It could say, I'll buy, you know, one out of every two shares that you have. Then it wouldn't be issuing stock. Well ‑‑ If it's issuing stock, how can it be purchasing something? It is the issuer in the sense that it has previously issued the covered securities. Well, if you're going to get back to what's previously been done, you're in trouble. Because I want to look at that other thing. It seems to mean issue currently. But if you take it, you're talking about current issuers. I find it hard to then say the company that's issuing the stock is purchasing. Well, I think ‑‑ What does that purchase refer to? Well, it has to refer to the transaction that gets us to SLUSA in the first place, which is the purchase or sale ‑‑ What? I'm sorry. I need to slow down, Your Honor. I'm sorry. It must refer to the transaction that gets us into SLUSA in the first place, which is the purchase or sale of a covered security. No, I'm asking you about the purchase, please. Correct. I'd like to correct my purchase. Yes. The purchase ‑‑ The issue of purchasing. Its own shares in this example. It would be making an offer to its own equity holders. We will buy ‑‑ Why would it be an issuer, then? Because it's already issued the shares. Then we can interpret it as ‑‑ Well, I think, Your Honor, you're pointing to a ‑‑ You see, if you get at that, then issuer means has issued as well as issued. It is clearly a shorthand here. We believe that the word issuer is shorthand for issuer of covered securities. Under plaintiff's reading, issuer would be shorthand for any corporation that issues shares. And I guess I don't see what the problem with that is. I mean, the concept here was obviously that you preserved, that Congress preserved a state action for shareholders who were lied to by their, alleged that they were lied to by their management, and I'm not sure why it makes a difference that the corporation was the issuer of covered securities or was just purchasing covered securities, as in this case, from another corporation. Why does that make a difference, and why, if it did make a difference, didn't Congress put in covered securities? Well, I ‑‑ several reasons, Your Honor. First, I would point to the legislative history, which makes it clear that the issuer ‑‑ Your voice is getting very low. Point to the legislative history, which makes it clear that it is the issuer of covered securities. You know what we think about the legislative history these days. Also to the ‑‑ Don't rely on that. Also to the context of the entirety of the Delaware exception, and as it's described, in fact, in the legislative history, which is to preserve state law for the internal communications between a corporation and the shareholders of that corporation. And corporations don't usually go around talking about other corporations, and that's not usually or necessarily the province of state law. It is the province of state law, the fiduciary duties that a corporation, that its directors and officers owe to their shareholders, is a distinct part of their state law. If I might also point out the consistent use of the, or the relatively consistent use of the definite article, the issuer, so we're not just talking about any issuer out there in the world. Well, we've got an issuer in there, too. There are two iterations of it. We've made a big deal out of V, but the an comes along. There are two iterations of the Delaware exception, one in the 33 Act, 15 U.S.C. 77, and the other in the 34 Act, 15 U.S.C. 78. The first one is consistent in its use of the issuer, and the second only uses the word an in one place, with no discernible interpretive significance, which is why we put stock in that. If I am out of time, Your Honor, so we believe that. It doesn't seem like Cowan did a very good job for $50,000 that it got. Your Honor, Cowan's engagement letter confined it to looking at FPA's public statements, and that's what it did. We urge that the district court's opinion be affirmed in all respects. If you want to make a couple of quick points. It was $550,000, not $50,000, by the way, that Cowan received. And there is no basis in law, no cases support the proposition that SLUSA would apply for misrepresentations that ended no later than February 10th regarding stock that wasn't even in existence until a week later. The whole purpose of SLUSA was to deal with fraud in the market and strike suits, not situations that we have here where you have a professional financial advisor that recommends whether or not you should make a cash transaction or a merger transaction. Thank you. Thank you very much. Madam, the accounting company has submitted.
judges: Hug, Noonan, Ikuta